GEORGE T. COULSTON et al. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation in Annexed Territory of Baltimore City—Turnpike Road as a Boundary—Paved Streets.*

Under the Act of 1902, Chapter 130, relating to the taxation of landed property situated in the territory annexed to Baltimore City in 1888, the full city rate of taxation cannot be imposed until the land is formed into blocks of ground bounded on all sides by intersecting streets, opened, graded and paved from curb to curb, and until there shall be upon every such block of ground at least six houses. *Held,* that a turnpike road used and graded as a street may be treated as one of the boundaries under said Act.

*Held,* further, upon the facts of the case, that a certain street was improved by pavement within the meaning of the Act.

*Decided January 13th, 1909.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*S. S. Field* (with whom was *Frank Driscoll* on the brief), for the appellant.

*Edgar Allan Poe, City Solicitor,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The appellants are the owners of property situated on Pennsylvania Avenue, Baltimore City, and embraced in the territory annexed to the City of Baltimore by the *Act of 1888, Chapter 98.* It was taxed at the full city rate for the year 1907, and the City Collector presented bills to the appellants demanding payment of the taxes, and notified them that unless the bills were paid within thirty days from July 1, 1908, he would take legal proceedings to enforce the collection of the taxes. The appellants, contending that their property under the Act of 1888, Chapter 98, known as the Annexation Act, as amended by the *Act of 1902, Chapter 130,* called the *Foutz Act,* is liable only to the sixty-cent rate for city purposes, filed their bill of complaint in the Circuit Court for Baltimore City for an injunction against the Mayor and City Council and Henry Williams, City Collector, to restrain them from demanding and collecting from the plaintiffs any greater sum for city purposes than the sixty-cent rate. The Court passed an order upon the bill requiring the respondents to show cause why an injunction should not issue as prayed.

The defendants demurred to the bill, but the Court overruled the demurrer. They then answered, and averred that the property of the plaintiffs was liable for the year 1907 to the full city rate of one dollar and ninety-seven and a half cents, and not for the rate of sixty cents as claimed in the bill. A general replication was filed, and testimony was taken in open Court before JUDGE GORTER, who, by consent of the parties, visited the property and inspected the condition of Pennsylvania Avenue at the place in question. On the 10th of August, 1908, he passed a decree dismissing the plaintiffs' bill. The record presents for consideration two questions:

1. Can a turnpike road be treated as an intersecting boundary under the Acts mentioned above?

2. Is the Reisterstown Turnpike Road, one of the boundaries of the block in question, "opened, graded, kerbed, and otherwise improved from kerb to kerb by pavement, macadam, gravel, *or other substantial material,"* as required by the Foutz Act?

The block does not exceed two hundred thousand superficial square feet, and it is admitted that the decree must be affirmed if the turnpike road may be used as one of the boundaries of the block, and if it is improved as required by the Foutz Act. This Court has had occasion frequently and so recently to consider the Acts of Assembly relating to taxation in the annexed territory of Baltimore City that it is unnecessary to discuss them anew in this opinion. We could not state more clearly than we have already done the principles which should guide the City in the imposition of taxes in the annexed district. *Sindall* v. *The Mayor and City Council,* 93 Md. 526; *Rosenthal* v. *The Mayor, Etc.,* 102 Md. 298; *Hiss* v. *The Mayor, Etc.,* 103 Md. 620; *Gail* v. *The Mayor, Etc.,* 106 Md. 684; *The Mayor, Etc.,* v. *Schafer,* 107 Md. 38.

After much that has been said calculated to create in the public mind a misapprehension of what this Court has so plainly decided, and to create the impression that some injustice has been done the city by these decisions, it was gratifying in this case to hear the learned City Solicitor declare that in no case decided by this Court had the City been denied the taxes to which it was rightly entitled.

The facts of this case are few. The property of the plaintiffs is situated in a block of ground bounded by Pennsylvania Avenue, Lynnbrook Avenue, Woodbrook Avenue, and Fulton Avenue. These avenues, except Pennsylvania Avenue, are public and paved Avenues of the City, and there is no claim made that they are not improved as required by the Foutz Act. The block is improved by more than six dwelling houses, but the exact number and character of the houses in the block

are not shown by the record. The block has the advantage of city lights. Pennsylvania Avenue in front of the plaintiffs' property is owned by the Reisterstown Turnpike Company, and it is contended that this turnpike road cannot be treated under the law as an intersecting boundary because, it is argued, that by the true construction of the acts mentioned none but public streets, avenues, and alleys can be used as intersecting boundaries. In support of that position the appellants rely upon the case of *Valentine* v. *Hagerstown*, 86 Md. 486. That case was fully considered in *Sindall's Case, supra*, in which this Court held that it was not essential to the right of the city to impose the full tax rate that the streets and avenues bounding the block should be *public* as claimed by the appellants in this case. We regard that case as decisive of this question. The reason why the *Valentine Case* cannot control the decision of the question here presented are fully stated by Judge McSherry in the *Sindall Case* on pages 530, 532. Although it was expressly decided in that case that private streets might be used as boundaries of the block, the *Act of 1902, Chapter 130,* which was passed shortly after that decision for the purpose of mitigating some of its supposed hardships, contains nothing to show the slightest intention to change the law of that case in the respect indicated. It defined the terms "landed property," and "block of ground;" declared how the streets should be improved; but did not require that they should be *public* as distinguished from private.

2. The only remaining question in the case is this: Is Pennsylvania Avenue, which we have held can be legally treated as one of the boundaries of the block, "opened, graded, kerbed and otherwise improved from kerb to kerb by pavements, macadam, gravel, or other substantial material?" The plaintiffs are claiming the benefit of certain provisions of law under which a partial exemption from taxation is conferred under certain given conditions. To secure this exemption the proof must bring the case fairly within the terms of the Acts by which the exemption is granted. We said in *Sindall's*

*Case, supra,* that the provision at the end of *Section 19* of the *Act of 1888, Chapter 98,* "was a restriction on the power of the municipality to levy more than a designated rate of taxes on property annexed to the City limits, until a prescribed condition is complied with. Like every other exemption from taxation it must be strictly construed. The taxing power is never presumed to be surrendered, and, therefore, every assertion that it has been relinquished must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny an exemption."

Pennsylvania Avenue is opened, graded and kerbed on both sides. It has gutters on both sides properly paved. And there are car tracks in the centre of the avenue and the space between the tracks, and two feet on the outside thereof is paved. The dispute in the case relates to the character of the roadbed between the outside of the gutters and the paving along the car tracks, the width of this space being six or seven feet. Its condition and its construction were largely questions of fact to be decided by the Judge before whom the case was heard. There is a presumption that he decided these questions rightly, and upon the facts appearing in the record we are not prepared to reverse the decision. The only witnessess produced to support the allegations of the bill were Messrs. Coulson, Schneider and Flater, three of the plaintiffs, and the evidence given by them is to the effect that the portion of the roadbed mentioned gets muddy in places after a rain, and in dry weather it gets dusty. They, however, admit that this roadway cannot be called a dirt road, or a country road, and that at times broken stones are deposited in the road for the purpose of filling holes which make their appearance therein from time to time. And there is testimony that at some places there is no stone at all, at least so far as the naked eye can see. Mr. Payne, an employee of the City examined the condition of the road on more than one occasion and testified that Pennsylvania Avenue at the intersection of Fulton Avenue corresponds with the grade of Fulton Avenue as repaved; that the grade is a nice grade up to

the crown of the hill, which is close to Lynnbrook Avenue; that he found the street kerbed both on the north and south side; that the gutter is paved and that there is about eighteen inches of cobble between the gutter stone and out from the gutter stone; that between the car tracks it is paved and that there is a space on the sides of the car track of about six or seven feet between the paving extending from the gutter and the paving extending from the car track on both sides of the street. He testified that in 1903 he made a report on that block and reported that, in his judgment, it was a macadam street; that it has the pike macadam condition, and that there is a solid, substantial base, even where the holes were, and when it had been somewhat cut up the south half of the street was in a very good condition, and that he could not see any fault that could be fairly found with it. This Court has never hesitated to restrain the collection of taxes levied upon annexed property in disregard of the provisions of the acts we have referred to; but it has never resorted to a forced and strained construction to accomplish that result. We think the situation and the character of the plaintiff's property, and the surrounding conditions are such as to fairly warrant the imposition of the full City rate. These annex tax cases must of necessity be disposed of upon the facts of each particular case. All this Court can do is to announce, as we have repeatedly done, the rule by which the Appeal Tax Court should be governed. The decision of each particular case coming here must depend upon our determination as to whether there has been a fair and just application of that rule to the facts of the particular case as they are shown by the record.

*Decree affirmed with costs.*