## Board of Commissioners of the County of Greene v. Lattas Creek Coal Company.

[No. 22,336. Filed January 31, 1913.]

1. MINES AND MINERALS.—*Conveyance of Minerals.*—Coal, or other mineral, in place, may be granted and conveyed as land, separate and apart from that which underlies it or overlies it. p. 214.

2. DEEDS.—*Creation of Estates Beneath Surface.*—For purposes of separate ownership, land may be divided horizontally as well as vertically, and an owner in fee may, by deed, create as many freeholds beneath the surface as he can properly designate. p. 214.

3. TAXATION.—*Minerals.—Land.—Statutes.*—Since coal or other mineral, in place, is land, it is sufficiently designated as taxable under the provisions of §§10142, 10143 Burns 1908, Acts 1891 p. 199, §§3, 4, that all property within the jurisdiction of the State, not expressly exempted, shall be subject to taxation, and that, for the purposes of taxation, real property shall include all lands within the State and all buildings and fixtures thereon and appurtenances thereto, without regard to §10259 Burns 1908, Acts 1891 p. 199, §97, which applies to mines and quarries. p. 216.

4. TAXATION.—*Assessment of Land.—Duty of Assessor.—Statutes.* —Under §10256 Burns 1908, Acts 1891 p. 199, §95, prescribing the manner in which real property shall be valued by the assessor, the assessor is not limited to a consideration of the things therein enumerated, but the end sought is the determination of the true value, and it is his duty to consider every factor involved, whether designated or not by the statute. p. 216.

5. TAXATION.— *Assessment of Land.— Minerals.— Statutes.—* The provisions of §10263 Burns 1908, Acts 1891 p. 199, §101, requiring the assessor to make return of the real estate listed for taxation with the value of each parcel "as determined by the assessor from actual view," does not evince a legislative intent to exclude hidden minerals from taxation, but the legislation on the subject of taxation contemplates that no one shall be required to pay taxes on property that he does not own, and that no one shall escape taxation on property that he owns. p. 217.

6. TAXATION.—*Assessment of Minerals.—Minerals in Place.*—Coal or other mineral, in place, is not rendered nontaxable merely because of lack of legislative method and regulation for determining its value; but, in fixing its value, the assessor has power to examine the owners under oath, and to consider the development of nearby mines, or anything that will help to arrive at the true value. p. 218.

7. TAXATION. — *Minerals.* — *Highways.* — Although §10257 Burns 1908, Acts 1897 p. 121, excludes from assessment against the owner of the fee highways and railroad rights of way, the prohibition applies only to land surfaces, and does not prevent the assessment against the owner of the fee of minerals under the way, especially where the same are susceptible of removal. p. 218.

8. TAXATION.— *Lands.*— *Minerals.*— *Severance of Title.*— Where there has been no severance of title, the owner of the fee holds the land taxable for the entire value thereof, including that of the underlying minerals, if any; and where there has been a severance, resulting in a divided ownership, the owner of the fee is properly assessable with the value of the surface, and the owner of the mineral with its value. p. 219.

From Greene Circuit Court; *Orion B. Harris,* Special Judge.

Action by the Lattas Creek Coal Company against the Board of Commissioners of the County of Greene. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394 subd. 2, Burns 1908, Acts 1901 p. 565.) *Reversed.*

*A. M. Beasley, Claude E. Gregg, Hunt & Gambill, Thomas M. Honan,* Attorney-General, *James E. McCullough, Edwin Corr, Thomas H. Branaman, Omer S. Jackson* and *Samuel Royse,* for appellant.

*Sydney B. Davis* and *George M. Davis,* for appellee.

*George M. Crane, Amicus Curiae.*

MORRIS, J.—The facts in this case, as disclosed by a special finding, are, that in 1902, appellee, a corporation, received a conveyance of "all the coal and other minerials" underlying a certain tract of real estate, consisting of 840 acres. No coal or other minerals was ever mined from said tract. In 1903, the township assessor, assessed such "coal and other minerals" for taxation, at the value of $10,080. The assessment was placed on the tax duplicate, and the treasurer collected from appellee the taxes levied thereon, amounting to $301.32. This was paid under protest. In a suit by appellee to recover the same, judgment was rendered for appellee.

From such judgment this appeal is prosecuted. The trial court stated as one of its conclusions of law that the coal and other minerals assessed were not subject to taxation. Appellant excepted to this conclusion, and error is here assigned on such ruling.

Appellant contends that the coal and other minerals, conveyed by deed to appellee, while retaining their natural position constitute land, which is taxable against the owner, without regard to §10259 Burns 1908, Acts 1891 p. 199 §97; and also, that with such section properly construed, it is assessable under the provisions thereof. Appellee contends that unless the legislature shall have designated property for taxation and provided methods and regulations for fixing values thereof, the same is not taxable.

That coal, or other mineral, in place, may be granted and conveyed as land, separate and apart from that which underlies or overlies it, is no longer disputed. The owner

1. in fee may, by deed, create as many freeholds beneath the surface as he can properly designate. For purposes of separate ownership land may be divided horizontal-

2. ly as well as vertically. *Knight* v. *Indiana Coal, etc., Co.* (1874), 47 Ind. 105, 110, 17 Am. Rep. 692, and cases cited; 20 Am. and Eng. Ency. Law (2d ed.) 771; *Hartwell* v. *Camman* (1854), 10 N. J. Eq. 128, 64 Am. Dec. 448; *Hosack* v. *Crill* (1902), 204 Pa. St. 97, 53 Atl. 640; *Stewart* v. *Commonwealth* (1893), 94 Ky. 595, 23 S. W. 367; *Low* v. *County Court, etc.* (1886), 27 W. Va. 785; *Consolidated Coal Co.* v. *Baker* (1891), 135 Ill. 545, 26 N. E. 651, 12 L. R. A. 247; *Ames* v. *Ames* (1896), 160 Ill. 599, 43 N. E. 592; *Barnes* v. *Mawson* (1813), 1 M. & S. 77; *Wolfe County* v. *Beckett* (1907), 127 Ky. 252, 105 S. W. 447, 32 Ky. Law 167, 17 L. R. A. (N. S.) 688, and case note. Different parties may own, in severalty, different stories of a building. *Anderson School Tp.* v. *Milroy Lodge, etc.* (1891), 130 Ind. 108, 29 N. E. 411, 30 Am. St. 206; *Graciosa Oil Co.* v. *Santa Barbara County* (1909), 155 Cal. 140, 99 Pac. 483, 20 L. R. A. (N. S.) 211.

Our Constitution provides that "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation and shall prescribe such regulations as shall secure a just valuation for taxation of all property." Constitution, Art. 10, §1.

The general assembly has enacted various statutes for the assessment and taxation of property, among which are the following: "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation." §10142 Burns 1908, Acts 1891 p. 199, §3. "For the purpose of taxation, real property shall include all lands within the state and all buildings and fixtures thereon and appurtenances thereto" * * *. §10143 Burns 1908, Acts 1891 p. 199, §4. Section 10256 Burns 1908, Acts 1891 p. 199, §95, provides as follows: "Real property shall be valued by the assessor as follows: Lands and the improvements and buildings thereon, or affixed thereto, shall be valued at their full, true cash value, estimated at the price they would bring at a fair, voluntary private sale, not a forced or sheriff's sale, taking into consideration the fertility of the soil, the vicinity of the same to railroads, macadamized roads, clay roads, gravel roads and turnpike roads, state or county roads, cities, towns, villages, navigable rivers, water privileges on the same, or in the vicinity of the same, the location of the route of any canal or canals, with any other local advantages of situation. In-lots and out-lots in all towns, cities or villages, with the improvements thereon or affixed thereto, shall be valued at their full cash value, as aforesaid, taking into consideration all of the local advantages upon actual view of the premises. All lands and lots shall also be listed at such valuation, without taking into consideration any improvements, and this valuation, as well as the valuation with the improvements, shall be set down in a proper column to be left for that purpose." Section 10257 Burns 1908, Acts 1897 p. 121, provides that real estate occupied by railroads or public highways shall not be assessed for taxation against the ad-

jacent property holder. Section 10259, *supra,* provides that in valuing any real property on which there is a mine or quarry, the same, if the land and the mine or quarry are owned by the same person, shall be valued at such price as such property including the mine or quarry, would sell for, and where the mine or quarry is owned by a person other than the owner of the surface, the "land", and mine or quarry, shall be separately valued and assessed to the respective owners.

It is contended by appellee that coal, or other mineral, in place, is not subject to taxation, unless the legislature not only shall have designated such property as taxable but also have provided sufficient methods and regulations for fixing the values thereof. The legislature, pursuant to constitutional authority has declared that all lands within the State are subject to taxation, and as coal or other mineral, in place, is land, it is sufficiently designated by statute, as taxable. It is contended that §10259, *supra,* has no application here, because there is no mine or quarry on the property; that §10256, *supra,* prescribes methods for fixing values which apply only to land surfaces, and cannot be considered with reference to fixing the value of coal or other minerals hidden beneath the surface; that the methods and regulations for the valuation of surface real estate, with no method or regulation for valuation for land beneath the surface evinces the legislative intent, not to tax such land, under the maxim of *expressio unius est exclusio alterius.*

It may be conceded that §10259, *supra,* is not applicable here because there is no mine or quarry on the premises. It may also be conceded that so much of §10256, *supra,* as requires the assessor to take into consideration the fertility of the soil and the vicinity of the same to macadamized and clay roads, and turnpikes, etc., concern only the fixing of the surface value of lands, as distinguished from that of underlying mineral. But it by no means fol-

lows that because the legislature requires assessors to take into consideration the matters enumerated, all others are excluded, even in fixing surface values. The statute demands of assessors that lands shall be valued at their true cash value, and as a means of ascertaining the same, requires them to take certain things into consideration; some of these things, such as the location of navigable rivers and canals are from their nature, of only local application. That the statute contemplates that assessors, in fixing the true cash value of land, shall be limited to a consideration of the matters therein set forth, involves the imputation to the legislature of an unreasonable intent, for it would preclude the assessor from considering the most important factor in fixing value—that of the selling price of similar lands in the vicinity. The end sought is the true value. No means to that end is excluded, and it is the duty of assessors to consider every factor involved in the value of land, whether designated or not, by the statute. The maxim *expressio unius est exclusio alterius* has no application here.

5. It is also claimed that §10263 Burns 1908, Acts 1891 p. 199, §101, which requires the assessor to make a return of the real estate listed for taxation with the value of each parcel "as determined by the assessor from actual view" evinces the legislative intent to exclude hidden minerals from taxation. Such theory would render §10259, *supra*, of little value. The amount of coal, in a single mine on an 840 acre tract of land, within the "actual view" of the assessor, might be a mere negligible quantity, although he might be possessed of knowledge beyond doubt of the existence of very large amounts in the tract. While many of the provisions of the statutes relating to assessments contain matters applicable only to methods of fixing surface values of land, we cannot concur in the conclusion of counsel for appellee that by reason thereof taxation of coal and mineral under the surface was not contemplated. We think

that our legislation contemplates that no one shall be required to pay taxes on property that he does not own, and that no one shall escape taxation on property he does own.

Appellee further contends that not only is there a lack of legislative method and regulation for determining the value of coal and mineral hidden beneath the surface, 6. but such method and regulation cannot be devised.

It is quite true that the valuation of such property is difficult when compared with the task of fixing surface values, or those of goods and chattels. It is also true that most serious difficulties are encountered in fixing the value of many kinds of property concededly subject to taxation. To determine the worth of a note executed by an insolvent person and secured by a mortgage on real estate, the title to which is in dispute, involves practical difficulties of no mean character, yet the assessor's duty is plain to ascertain as nearly as possible the true value of the note. The assessor here did fix a valuation of the coal and mineral. It is not claimed that such valuation was excessive. It is simply claimed the property is not taxable. The existence of the coal or mineral is impliedly admitted by appellee by accepting a deed therefor. In fixing its value the assessor had a right to examine the proper officers of appellee under oath; he had a right to elicit from them the result of borings, if any, for coal or mineral, in the tract, and to be informed by them of the actual purchase price. The assessor also had the right to consider development, if any, of mines, in the neighborhood, and sales of mineral rights or other facts constituting elements of value.

Section 10257, *supra,* excludes from assessment against the owner of the fee highways and railroad rights of way. This prohibition evidently is intended to apply only 7. to land surfaces, for it is settled law that the owner of the fee owns the mineral under highways and railroads, and may remove them, if possible so to do, without damage to the highway or roadway. We do not think this

statute prevents the assessment against the owner of the fee of minerals under the way, at least where the same are susceptible of removal. We cannot overlook the fact that land in the vicinity of mines may have very little value for agricultural purposes, but, by reason of underlying minerals may have a market value greater than that of the best agricultural lands. It is contemplated by our Constitution and statutes that taxes shall be levied on all lands of the State in proportion to their true values, and such end cannot be attained by permitting mineral lands to escape the burden of all values except agricultural ones.

Where there has been no severance of title, the owner of the fee holds the land taxable for the entire value thereof, including that of the underlying minerals, if any;

8.  where there is a severance, resulting in a divided ownership, the owner of the fee is properly assessable with the value of the surface, and the owner of the mineral with its value. *Sanderson* v. *City of Scranton* (1884), 105 Pa. St. 469; *Caldwell* v. *Copeland* (1860), 37 Pa. St. 427; 78 Am. Dec. 436; *Bakersfield, etc., Oil Co.* v. *Kern County* (1904), 144 Cal. 148, 77 Pac. 892; *Coulston* v. *Mayor, etc.* (1909), 109 Mu. 271, 71 Atl. 990; *Wolfe County* v. *Beckett, supra; Smith* v. *Mayor* (1877), 68 N. Y. 552; *People, ex rel.,* v. *Bell* (1908), 237 Ill. 332, 86 N. E. 593, 19 L. R. A. (N. S.) 746, 15 Ann. Cas. 511; *Graciosa Oil Co.* v. *Santa Barbara County, supra; State* v. *Downman* (1911), 134 S. W. (Tex.) 787; 37 Cyc. 776. Appellee cites *State Board, etc.,* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826; *Hart* v. *Smith* (1902), 159 Ind. 182, 64 N. E. 661, 58 L. R. A. 949, 95 Am. St. 280; and other cases, in support of the proposition that a tax cannot be laid on any specific property unless the same has been made taxable by statute. We think the decisions cited are not applicable here, because, as before stated, all land is, by the express terms of our statute, subject to taxation.

The trial court erred in its conclusion of law that the property assessed was not taxable. Other questions are presented, but in view of the conclusion reached, they require no consideration. Judgment reversed, with instructions to the trial court to restate its conclusions of law and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 100 N. E. 561. See, also, under (1) 27 Cyc. 681; (3, 5, 6, 8) 37 Cyc. 775; (4) 37 Cyc. 1009. As to the severability of minerals and surface, see 24 Am. St. 554. For a discussion of an interest in minerals as taxable separately from the land, see 15 Ann. Cas. 513.